# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No._____

---

Hunter Richardson, Alec Coscarella, and Jennifer Anderson,
on behalf of themselves and others similarly situated,

       Plaintiff,

v.

Rye Fire Protection District,
a Colorado Special District,

       Defendant.

---

## COMPLAINT

---

COME NOW the Plaintiffs, Hunter Richardson, Alec Coscarella, and Jennifer Anderson, by and through counsel, CORNISH & DELL'OLIO, P.C., and for their Complaint against the Defendant, states as follows:

### Introduction

1.     This is an action for wages brought pursuant to the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*

2.     Plaintiffs will move the Court for leave to send notice to the class and to pursue the action under authority of 29 U.S.C. § 216(b) as a collective action.

3.     Additionally, Plaintiffs Anderson, Coscarella, and Richardson assert claims for retaliation in violation of the FLSA.

4.     Plaintiffs Anderson, Coscarella, and Richardson intend to amend this Complaint to add claims violations of Colorado's Protected Health/Safety Expression and Whistleblowing

("PHEW") Law, C.R.S. § 8-14.4-101, *et seq.*, after they have exhausted their administrative remedies as required by statute.

## Jurisdiction

5.      This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) to enforce the provisions of the federal Fair Labor Standards Act as well as jurisdiction pursuant to 28 U.S.C. §1331.

## Venue

6.      The unlawful actions described below were committed in the state of Colorado. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## Others are Similarly Situated

7.      Plaintiffs will seek to certify a collective class action under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

8.      Plaintiffs seek to certify a class of all other firefighters employed by the Rye Fire Protection District after January 20, 2023, who were employed to provide fire protection services and who were not paid at one-and-one-half times their regular rate of pay for hours worked over forty in a single work week.

9.      Plaintiffs Anderson, Coscarella, and Richardson, and those similarly situated were affected by a common compensation policy, plan or decision which was made by the Board of Directors of the Rye Fire Protection District or its Fire Chief who was authorized to establish a compensation plan for firefighters.  Specifically, a decision, plan or policy was implemented to pay firefighters at their regular rate of pay for hours worked over 40 in a single work week, and not to pay them one and one-half times their regular rate of pay for hours worked over forty in a

single work week.

10.     Plaintiffs Anderson, Coscarella, and Richardson, and all other similarly situated firefighters in the proposed class, regardless of rank or pay level: (a) are trained in fire suppression; (b) have the legal authority and responsibility to engage in fire suppression; (c) performed work such as preventing, controlling or extinguishing fires, response to emergency situations, rescuing fire or accident victims, or other similar work; (d) shared the same job duties; (e) were subject to the same compensation policies; and (f) were improperly paid at their regular rate of pay for hours worked over forty in a single work week or were improperly treated as exempt pursuant the federal Fair Labor Standards Act.

## Parties

11.     Hunter Richardson is a natural person who resides in Colorado.  At all times relevant to the Complaint, he was employed as a firefighter/EMT by the Rye Fire Protection District.

12.     Hunter Richardson was employed by the Rye Fire Protection District for two years and seven months until his employment was terminated on October 25, 2024.

13.     Alec Coscarella is a natural person who resides in Colorado.  At all times relevant to the Complaint, he was employed as a firefighter Captain/Paramedic by the Rye Fire Protection District.

14.     As of the date of filing of this Complaint, Alec Coscarella has been employed by the Rye Fire Protection District for 17 months.

15.     Jennifer Anderson is a natural person who resides in Colorado.  At all times relevant to the Complaint, she was employed as a firefighter Captain/Paramedic by the Rye Fire Protection District.

16.    As of the date of filing of this Complaint, Jennifer Anderson has been employed by the Rye Fire Protection District for eight years.

17.    The Rye Fire Protection District is a Colorado Special District established and organized under the authority of Title 32 of the Colorado Revised Statutes.

18.    The Rye Fire Protection District is a public agency.

19.    The Rye Fire Protection District is an employer within the meaning of 29 U.S.C. § 203(d).

20.    At all times relevant to the Complaint, the Plaintiffs were engaged in commerce within the meaning of 29 U.S.C. § 203(b).  Alternatively, the Rye Fire Protection District was an enterprise engaged in commerce within the meaning of 29 U.S.C. § 201(s)(1).

## Factual Allegations

21.    Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

### The Rye Fire Protection District Does Not Pay Overtime Compensation as Required by the Fair Labor Standards Act

22.    The Rye Fire Protection District (hereafter "RFPD" or "the District") operates a fire department that employs firefighters, paramedics, and emergency medical technicians ("EMT") that operate out of two fire stations to provide an "all hazards" response that includes medical emergencies, car accidents, vehicle fires, structural fire, hazardous materials releases, and wildland fire within three counties and national forest lands covering approximately 240 square miles.

23.    In addition to providing service within the District's boundaries, the RFPD provides mutual aid assistance to neighboring fire departments and fire protection districts.

24.    All firefighters employed by the RFPD, regardless of rank or pay level: are

trained in fire suppression; have the legal authority and responsibility to engage in fire suppression; and performed work such as preventing, controlling or extinguishing fires, response to emergency situations, rescuing fire or accident victims, or other similar work.

     25.    None of the firefighters employed by the RFPD, regardless of rank or pay level, are exempt from the overtime requirements of the FLSA.

     26.    At all times relevant to this Complaint, the RFPD operated on a "48/96 schedule" for firefighting employees.

     27.    A 48/96 schedule involves firefighter employees working for 48 straight hours and then being off duty for the next 96 hours.

     28.    A 48/96 schedule is also colloquially referred to as a "two days on, four days off" work schedule.

     29.    The RFPD scheduled three crews of firefighters pursuant to the 48/96 schedule: the A shift, B shift and C shift.

     30.    The crew assigned to each shift worked 48 straight hours which was followed by 96 hours off before returning to work for another 48 straight hours.

     31.    With three shifts rotating every 48 hours, a typical schedule looks like the example below:

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|--------|--------|---------|-----------|----------|--------|----------|
| A-Shift | A-Shift | B-Shift | B-Shift | C-Shift | C-Shift | A-Shift |
| A-Shift | B-Shift | B-Shift | C-Shift | C-Shift | A-shift | A-Shift |
| B-Shift | B-Shift | C-Shift | C-Shift | A-Shift | A-Shift | B-Shift |
| B-Shift | C-Shift | C-Shift | A-Shift | A-Shift | B-Shift | B-Shift |
| C-Shift | C-Shift | | | | | |

     32.    Under the 48/96 schedule the firefighters assigned to two crews would work at least 48 hours in a week, and the firefighters on the third crew would work at least 72 in a week.

     33.    Under the 48/96 schedule, the RFPD firefighters worked a recurring six-day

cycle.

34.    The RFPD never adopted an established and regularly recurring work period for the firefighters.

35.    The RFPD never expressed an intention to have a specific established and regularly recurring work period for the firefighters.

36.    In job offer letters provided to employees, the RFPD stated that employee "regularly scheduled work hours will be as designated" but did not state if there was an established and regularly recurring work period for the firefighters.

37.    At all times relevant to this Complaint, RFPD payroll is tallied from the 28th of the month to the following 27th.

38.    At all times relevant to this Complaint, the RFPD paid firefighter employees on the first day of the month.

39.    At all times relevant to this Complaint, the RFPD's pay records indicate that firefighter employees were paid on the first day of the month for work performed during the previous calendar month.

40.    While using the 48/96 schedule, the RFPD never identified an established and regularly recurring period of work for the firefighters.

41.    While using the 48/96 schedule, the RFPD never established a beginning and ending time for the firefighters' work period.

42.    The RFPD did not pay firefighters at one-and-one-half times their regular rate of pay for hours worked over 40 in a single workweek.

43.    The RFPD did not pay firefighters at one-and-one-half times their regular rate of pay for hours worked over 212 in a 28-day period.

44.     The RFPD did not pay firefighters at one-and-one-half times their regular rate of pay for hours worked which exceeded the number of hours which bears the same relationship to 212 as the number of days in a work period bears to 28.

45.     The RFPD simply did not pay overtime compensation to firefighters, regardless of the number of overtime hours the firefighters worked.

46.     The pay plan adopted and implemented by the RFPD failed to properly compensate firefighters for the hours they worked.

47.     Under the RFPD's pay plan, Plaintiffs Alec Coscarella and Hunter Richardson were paid on an hourly basis.

48.     Under the RFPD's pay plan, Alec Coscarella and Hunter Richardson were paid straight time for all hours worked and were never paid an overtime premium for hours over 40 in a single workweek.

49.     Under the RFPD's pay plan, Alec Coscarella and Hunter Richardson were paid straight time for all hours worked and were never paid an overtime premium for hours over 212 in a 28-day period.

50.     Under the RFPD's pay plan, Alec Coscarella and Hunter Richardson were paid straight time for all hours worked and were never paid an overtime premium for hours worked which exceeded the number of hours which bears the same relationship to 212 as the number of days in a work period bears to 28.

51.     Under the RFPD's pay plan, Plaintiff Jennifer Anderson was paid on a salary basis.

52.     Under the RFPD's pay plan, Jennifer Anderson was paid her salary, regardless of the number of hours she worked.

53.     Under the RFPD's pay plan, Jennifer Anderson was paid her salary, regardless of the number of hours she worked, and was never paid an overtime premium for hours over 40 in a single workweek.

54.     Under the RFPD's pay plan, Jennifer Anderson was paid her salary, regardless of the number of hours she worked, and was never paid an overtime premium for hours over 212 in a 28-day period

55.     Under the RFPD's pay plan, Jennifer Anderson was paid her salary, regardless of the number of hours she worked, and was never paid an overtime premium for hours worked which exceeded the number of hours which bears the same relationship to 212 as the number of days in a work period bears to 28.

56.     The pay plan adopted by the RFPD does not provide any overtime compensation to non-exempt firefighter employees.

57.     The pay plan adopted by the RFPD violates the FLSA.

**The Rye Fire Protection District Retaliated Against Plaintiffs Anderson, Coscarella, and Richardson for Making Complaints About Fair Labor Standards Act Violations**

58.     In late August 2024, two RFPD firefighters approached Alec Coscarella and expressed to him their concerns that they were not being paid properly for all the hours they worked.

59.     After being approached by the firefighters who expressed concerns about their wages, Alec Coscarella conducted research into proper pay practices for fire departments and firefighters by, among other things, reviewing documents from the International Association of Firefighters related to firefighter pay.

60.     The research that Alec Coscarella conducted led him to believe that RFPD's pay

practices were not in compliance with the FLSA.

61.     After learning information that led him to believe that RFPD's pay practices were not in compliance with the FLSA, Alec Coscarella spoke with Chief Steve Bennett, the Chief of RFPD, about overtime pay.

62.     During their conversation, Chief Bennett told Alec Coscarella that RFPD was supposed to be paying overtime to its firefighters and stated that RFPD could not pay overtime because of RFPD's revenue.

63.     On August 29, 2024, Alec Coscarella communicated to RFPD's Board members that Chief Bennett had acknowledged to him that RFPD was required to pay overtime and that revenue prevented it from complying with that requirement.

64.     When Alec Coscarella notified the RFPD Board about Chief Bennett's acknowledgment that RFPD was required to pay overtime, Alec Coscarella also notified the Board of his belief that there were other potential FLSA violations by RFPD.

65.     Chief Bennett was aware of Alec Coscarella's August 29, 2024 communication to the RFPD Board about overtime requirements and potential FLSA violations.

66.     Alec Coscarella's August 29, 2024 communication to the RFPD Board about potential FLSA violations and the RFPD's knowing failure to pay overtime to firefighters constitutes activity protected by 29 U.S.C. § 215(a)(3).

67.     On September 1, 2024, Jennifer Anderson met with Chief Bennett and the two discussed Jennifer Anderson's concerns that the RFPD's pay plan for firefighters did not comply with the FLSA.

68.     During their conversation on September 1, 2024, Chief Bennett told Jennifer Anderson that Alec Coscarella had approached him a few days earlier and raised concerns that

the RFPD was not paying firefighters as required by the FLSA.

69.     Chief Bennett appeared angry that Alec Coscarella had raised the issue of FLSA compliance, and during their conversation on September 1, 2024, Chief Bennett told Jennifer Anderson that he was irritated about the issue and that the firefighters were paid a lot of money.

70.     In response to Chief Bennett's expression of anger and irritation with Alec Coscarella and the FLSA issue, Jennifer Anderson told Chief Bennett that it was his and the Board's responsibility to figure out how to pay the firefighters properly.

71.     Jennifer Anderson's comment to Chief Bennett that it was his and the Board's responsibility to figure out how to pay the firefighters properly constitutes activity protected by 29 U.S.C. § 215(a)(3).

72.     During their conversation on September 1, 2024, Chief Bennett told Jennifer Anderson that he was concerned that his employees wanted him to go to jail for violating the FLSA.

73.     Alec Coscarella and Jennifer Anderson attended the September 16, 2024 Board meeting.

74.     After the September 16, 2024 Board meeting ended, the Board President, Board member Walker, and Chief Bennett had a conversation with Alec Coscarella and Jennifer Anderson.

75.     During the September 16, 2024 conversation after the Board meeting, Alec Coscarella and Jennifer Anderson shared their concerns about the RFPD not complying with the FLSA with respect to firefighter pay.

76.     Alec Coscarella and Jennifer Anderson's expression of concern about the RFPD's failure to comply with the FLSA to the RFPD Board President, Board member Walker, and

Chief Bennett constitutes activity protected by 29 U.S.C. § 215(a)(3).

77.     After hearing Alec Coscarella and Jennifer Anderson's concerns about the RFPD not complying with the FLSA with respect to firefighter pay, the Board members shared that the Board had discussed the issue during that evening's executive session but could not provide any additional information.

78.     As a benefit of his employment with the RFPD, Alec Coscarella was provided with a vehicle that he could take home after his shift and use for rapid response to emergencies within the boundaries of the RFPD.

79.     On September 20, 2024, Chief Bennett directed Alec Coscarella to return the vehicle and leave it at Fire Station 2.

80.     Chief Bennett directed Alec Coscarella to return the vehicle in retaliation for Alec Coscarella raising concerns to the Board about the RFPD's failure to comply with the FLSA.

81.     On September 23, 2024, Alec Coscarella and Jennifer Anderson met with two members of the RFPD Board.

82.     During their September 23, 2024 meeting with members of the RFPD Board, Alec Coscarella and Jennifer Anderson expressed concerns to the Board about the RFPD's failure to comply with the FLSA.

83.     Alec Coscarella and Jennifer Anderson's expression of concern to the Board about the RFPD's failure to comply with the FLSA constitutes activity protected by 29 U.S.C. § 215(a)(3).

84.     During their September 23, 2024 meeting with members of the RFPD Board, Alec Coscarella explained his belief that Chief Bennett had taken away his RFPD-issued vehicle in retaliation for raising concerns about potential FLSA violations.

85.     In early April 2024, Alec Coscarella was promoted to Captain.

86.     Upon his promotion to Captain, Alec Coscarella assumed responsibility for preparing the work schedules for the RFPD firefighters.

87.     On October 11, 2024, Chief Bennett took the scheduling duties away from Alec Coscarella.

88.     In or around mid-October 2024, Hunter Richardson began drafting a letter to the RFPD Board to request that the Board remove Chief Bennett from his position.

89.     Hunter Richardson sought the Chief's removal for a variety of reasons, including the Chief's failure to take action to correct the pay of the RFPD employees and compensate them for their overtime hours.

90.     Hunter Richardson contacted all the members of the RFPD to discuss the letter he was writing to the Board asking for the Chief's removal.

91.     Hunter Richardson discussed his concerns about Chief Bennett with the other members of the RFPD, including discussing his concerns about what he believed to be improper pay practices and FLSA violations at RFPD that the Chief had not addressed.

92.     Hunter Richardson had discussions about his concerns with Chief Bennett with the other members of the RFPD because he wanted those employees to sign the letter he was writing to the Board.

93.     Hunter Richardson's discussions with other RFPD employees about what he believed to be improper pay practices and FLSA violations at RFPD that the Chief had not addressed constitutes activity protected by 29 U.S.C. § 215(a)(3).

94.     One of the RFPD employees that Hunter Richardson spoke with about seeking Chief Bennett's removal was Reese Bennett.

95.     Reese Bennett is Chief Bennett's son.

96.     Hunter Richardson's last communication with RFPD employees about his concerns with Chief Bennett and his letter asking the Board to remove the Chief took place on October 20, 2024.

97.     Alec Coscarella spoke to members of the RFPD Board after the executive session at the Board's October 21, 2024 meeting and raised numerous concerns about the RFPD's failure to comply with the FLSA.

98.     When Alec Coscarella spoke to members of the RFPD Board on October 21, 2024, he inquired about the status of the update on FLSA issues that the Board had promised to deliver.

99.     When Alec Coscarella spoke to members of the RFPD Board on October 21, 2024, he told the Board members that it was imperative for the RFPD to do things the right way and not try to nickel and dime the firefighters who had not been properly paid for all the time they had worked.

100.     When Alec Coscarella spoke to members of the RFPD Board on October 21, 2024, he informed the Board members of his belief that the RFPD could not properly deduct meal and sleep time from the firefighters' wages.

101.     On October 21, 2024, after Alec Coscarella told the RFPD Board members of his belief that meal and sleep time could not be deducted from the firefighters' wages, the RFPD Board President became agitated, raised his voice, and expressed his disagreement with Alec Coscarella's view about deducting meal and sleep time.

102.     On October 21, 2024, after the RFPD Board President became agitated at Alec Coscarella about the subject of firefighter pay, Alec Coscarella stated to the Board members that

the RFPD would be setting itself up for potential lawsuits if the RFPD did not do things by the book.

103.     After Alec Coscarella mentioned the possibility of lawsuits over firefighter pay during the October 21, 2024 conversation, the RFPD Board President and Board member Hicks stated that it sounded like Alec Coscarella was threatening to sue the RFPD and that they did not like or appreciate that threat.

104.     In response to the RFPD Board President and Board member Hicks' October 21, 2024 comments about not appreciating the threat of a lawsuit, Alec Coscarella replied that he was not threatening to sue, and emphasized that the FLSA applied to the RFPD, that there was no room for error, and that the Board needed to do the right thing for the firefighters.

105.     Alec Coscarella's comments to the RFPD Board members about the RFPD's need to comply with the FLSA, that meal and sleep time could not properly be deducted from firefighters' wages, and the possibility of FLSA litigation because of the RFPD's violations all constitutes activity protected by 29 U.S.C. § 215(a)(3).

106.     On October 23, 2024, Chief Bennett announced that the RFPD had created an Assistant Fire Chief position and appointed Ross Gallegos to the position.

107.     The Assistant Fire Chief position was a new position that did not exist before October 23, 2024.

108.     The Assistant Fire Chief position was a promotional opportunity for any member of the RFPD.

109.     The RFPD did not announce or post the Assistant Fire Chief job as required by the Colorado Equal Pay for Equal Work Act.

110.     The RFPD did not provide any employees with notice or an opportunity to apply

14

for the Assistant Fire Chief position as required by the Colorado Equal Pay for Equal Work Act.

111.    As of October 23, 2024, Jennifer Anderson was the most senior officer in the RFPD below the Chief.

112.    As of October 23, 2024, Jennifer Anderson was a significantly more experienced firefighter, paramedic, and fire officer than Ross Gallegos.

113.    If the RFPD needed to appoint an employee to an Assistant Fire Chief position without posting the job or having a competitive hiring process, Jennifer Anderson was the most qualified choice to fill the position.

114.    If the RFPD needed to appoint an employee to an Assistant Fire Chief position without posting the job or having a competitive hiring process, Jennifer Anderson was the most obvious choice to fill the position.

115.    Prior to being appointed Assistant Fire Chief, Ross Gallegos had not spoken out about FLSA violations by the RFPD.

116.    Before the decision was made to appoint Ross Gallegos as Assistant Fire Chief, Jennifer Anderson spoke to the RFPD Board to express concerns about FLSA violations by the RFPD.

117.    The RFPD did not consider Jennifer Anderson for promotion to the Assistant Fire Chief position.

118.    The RFPD did not consider Jennifer Anderson for promotion to the Assistant Fire Chief position because she had spoken out in opposition to the RFPD's violations of the FLSA on multiple occasions.

119.    The RFPD's decision not to promote Jennifer Anderson to the Assistant Fire Chief position was made in retaliation for her complaints about FLSA violations.

120.    Hunter Richardson was off duty and not working on October 21-24, 2024.

121.    Upon information and belief, one or more of the RFPD employees told Chief Bennett that Hunter Richardson was planning on asking the RFPD Board to remove the Chief.

122.    Hunter Richardson returned to work for his regularly scheduled shift on October 25, 2024.

123.    When he returned to work on October 25, 2024, Hunter Richardson's employment was terminated.

124.    Hunter Richardson's employment was terminated because he raised concerns about Chief Bennett, including Chief Bennett's refusal to address the improper pay practices and FLSA violations at RFPD.

125.    Alec Coscarella attended the RFPD Board meeting on November 18, 2024.

126.    Jennifer Anderson was unable to attend the November 18, 2024 RFPD Board meeting because she was on duty.

127.    Alec Coscarella spoke during the public comment period at the November 18, 2024 RFPD Board meeting and explained that Jennifer Anderson could not be there and had asked him to read a statement that she had prepared.

128.    During the November 18, 2024 RFPD Board meeting, Alec Coscarella read Jennifer Anderson's statement that questioned the decision to terminate Hunter Richardson's employment when the Chief was violating state and federal law.

129.    During the November 18, 2024 RFPD Board meeting, Alec Coscarella spoke on his own behalf and questioned the decision to create an Assistant Fire Chief position and how the RFPD decided to staff that new position.

130.    Alec Coscarella and Jennifer Anderson's expression of concerns at the November

18, 2024 RFPD Board meeting as described above constitutes activity protected by 29 U.S.C. § 215(a)(3).

131.     Prior to December 20, 2024, Alec Coscarella and Jennifer Anderson's duties included handling operational issues, disciplinary matters, and personnel matters.

132.     Prior to December 20, 2024, Alec Coscarella and Jennifer Anderson's duties included handling EMS issues and compiling QA/QI reports that were required to be submitted to the RFPD medical director.

133.     In December 2024, Chief Bennett took the operational, disciplinary, and personnel duties away from Alec Coscarella and Jennifer Anderson and assigned those duties to Assistant Chief Gallegos.

134.     In December 2024, Chief Bennett took the EMS and QA/QI reporting duties away from Alec Coscarella and Jennifer Anderson and assigned those duties to Assistant Chief Gallegos.

135.     Chief Bennett took the duties away from Alec Coscarella and Jennifer Anderson in retaliation for their complaints about FLSA violations.

136.     On January 6, 2025, Assistant Fire Chief Gallegos informed Alec Coscarella that his job duties would be changed to eliminate all operational and supervisory duties and that he would be moved into a purely administrative position in which he would review emergency medical reports.

137.     The change in Alec Coscarella's job duties would eliminate his role as a firefighter/paramedic and take away all supervisory authority.

138.     After Assistant Fire Chief Gallegos informed Alec Coscarella of the change to his duties, Alec Coscarella stated that he felt the decision to change his duties and eliminate

operational and supervisory duties was retaliation for raising concerns about issues in the RFPD, including the RFPD's failure to comply with the FLSA.

139.    The following day, January 7, 2025, Alec Coscarella informed Assistant Fire Chief Gallegos again that he objected to the change in duties, that he felt the change was in fact a demotion, and that it was demeaning and punitive.

140.    On January 20, 2025, Assistant Fire Chief Gallegos met with Alec Coscarella and informed him that the change to his job duties was effective, and that Alec Coscarella would no longer have any operational or supervisory duties.

141.    During the January 20, 2025 meeting, Alec Coscarella told Assistant Fire Chief Gallegos that he believed the RFPS was taking away his operational and supervisory duties in retaliation for his reporting of concerns about FLSA violations.

142.    While meeting with Alec Coscarella on January 20, 2025, Assistant Fire Chief Gallegos told Alec Coscarella that he was being written up for insubordination, that the Board, the Chief and the Assistant Chief had not yet determined what disciplinary penalty they would impose on Alec Coscarella, and that the penalty would be determined in the next 30 days.

143.    The change in Alec Coscarella's duties and the disciplinary write up were done in retaliation for Alec Coscarella's complaints about FLSA violations at the RFPD.

144.    Defendant's retaliatory treatment of Hunter Richardson, Alec Coscarella, and Jennifer Anderson caused them to suffer a great deal of emotional distress and significant economic and/or noneconomic losses.

### First Cause of Action
### (for violations of the Fair Labor Standards Act, 29 U.S.C. § 207)

145.    Plaintiffs reallege all prior paragraphs and incorporate them herein.

146.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and others similarly

situated, were at all times relevant to the Complaint nonexempt employees under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

147.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters, were required to and did work more than 40 hours in a single workweek.

148.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters, were required to and did work more than 212 hours in a twenty eight day regularly recurring period of work.

149.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters, were required to and did work more than the number of hours which bears the same relationship to 212 as the number of days in a work period bears to 28 in any regularly recurring period of work.

150.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters, were not paid at one-and-one-half times their regular rate of pay for hours worked over 40 hours in a single work week.

151.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters, were not paid at one-and-one-half times their regular rate of pay for hours worked over 212 hours in a twenty eight day regularly recurring work period.

152.    Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters, were not paid at one-and-one-half times their regular rate of pay for hours worked over the number of hours which bears the same relationship to 212 as the number of days in a work period bears to 28 in any regularly recurring work period.

153.    The Board of the Rye Fire Protection District and its Fire Chief knew that Hunter Richardson, Alec Coscarella, and Jennifer Anderson, and other similarly situated firefighters,

were working without overtime pay in violation of Section 7(k) of the federal Fair Labor

Standards Act.

154.    The Defendant's failure to pay Hunter Richardson, Alec Coscarella, and Jennifer

Anderson, and other similarly situated firefighters, one-and-one-half times their regular rate of

pay for all hours worked in excess of forty hours in a single work week was in violation of the

federal Fair Labor Standards Act (29 U.S.C. § 207).

155.    The Defendant's violations of the federal Fair Labor Standards Act were willful.

## Second Cause of Action
### (Retaliation against Hunter Richardson, Alec Coscarella, and Jennifer Anderson in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3))

156.    Plaintiffs reallege all prior paragraphs and incorporate them herein.

157.    Plaintiffs Hunter Richardson, Alec Coscarella, and Jennifer Anderson each made

good faith complaints about violations of the Fair Labor Standards Act as described herein.

158.    Plaintiffs Hunter Richardson, Alec Coscarella, and Jennifer Anderson were each

subjected to materially adverse actions as described herein, including, the termination of

employment, failure to promote, the withdrawal of benefits, and the withdrawal of duties.

159.    Defendant subjected Plaintiffs Hunter Richardson, Alec Coscarella, and Jennifer

Anderson to the materially adverse action described herein because of each Plaintiff's complaints

about violations of the FLSA.

160.    Defendant's retaliatory acts caused Plaintiffs Hunter Richardson, Alec Coscarella,

and Jennifer Anderson to suffer damages.

## Prayer for Relief

WHEREFORE, Plaintiffs Hunter Richardson, Alec Coscarella, and Jennifer Anderson

demand judgment against the Defendant in an amount which will compensate them and others

who may join in the action, following notice, for all hours worked in excess of forty hours in a single work week at one-and-one-half times their regular hourly rate of pay, for liquidated damages as provided for by 29 U.S.C. 216 (b), and for attorney's fees and costs as provided for by 29 U.S.C. 216 (b).

Plaintiffs Hunter Richardson, Alec Coscarella, and Jennifer Anderson also demand judgment for reinstatement, back pay, front pay, liquidated damages, compensatory damages, costs, and attorney's fees for the retaliation they suffered.

Respectfully submitted this 20th day of January, 2025.

CORNISH & DELL'OLIO, P.C.

s/Ian D. Kalmanowitz
Ian D. Kalmanowitz, #32379
Cornish & Dell'Olio, P.C.
431 N. Cascade Ave. Suite 1
Colorado Springs, CO 80903
Telephone:  719-475-1204
ikalmanowitz@cornishanddellolio.com
Attorney for the Plaintiffs

Plaintiffs' addresses:

c/o Cornish & Dell'Olio, P.C.
431 N. Cascade Ave., Suite 1
Colorado Springs, CO 80903